Grant H. Lawson # 6-4260
Michael W. Chaloupka, Esq. #39842
Galen Trine-McMahan, Co. Reg. #47979
**METIER LAW FIRM, LLC**
4828 S. College Avenue
Fort Collins, CO 80525
(970) 377-3800
(970) 225-1476 (fax)
mike@metierlaw.com
grant@metierlaw.com
galen@metierlaw.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **Kegan Dragoman,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MIDWEST HOSE AND SPECIALTY, INC., an** | ) |
| **Oklahoma Corporation, and John Doe and** | ) |
| **John Doe Corporations,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Kegan Dragoman, by and through his attorneys, for his claims against Defendants, states and alleges as follows:

## PARTIES

1. Plaintiff Kegan Dragoman was at all times relevant to the facts alleged herein domiciled in the state of Idaho.

2. Plaintiff was at all times material a resident and citizen of Idaho.

3. Plaintiff brings the counts of strict liability, negligence, breach of implied warranty and breach of expressed warranty, for personal injuries he sustained pursuant to the laws of the State of Colorado, where the injury occurred.

4. Defendant Midwest Hose and Specialty Inc., ("Midwest Hose"), is a Oklahoma corporation with its principal place of business at 312 S. I-35 Service Road, OKLAHOMA CITY, OK 73129, United States.

5. Defendants John Doe and John Doe Corporation participated in the distribution of the hose which is central to this dispute.  The identity of any distributors, beyond Midwest Hose and Specialty, is unknown to the Plaintiff despite Plaintiff's best efforts to identify additional distributors.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and controversy pursuant to 28 USC §1332, because the amount in controversy is greater than $75,000 and the parties are citizens of different states.

7. On May 15, 2019, Plaintiff submitted notice to Workers' Compensation of this action, 20 days prior to this filing.

## BACKGROUND

8.  Upon information and belief, Defendant Midwest Hose manufactured, assembled, advertised, marketed, promoted and/or sold the MWHR12-32 "Kelly" hose which ruptured on June 7, 2018 ("the subject hose").

9.  Defendant Midwest Hose caused an event to occur, out of which this claim arises, in that Defendant Midwest Hose designed, manufactured, assembled and distributed the subject hose, which included defects in design, manufacture, guarding and warnings for use of the hose.  Said defects in design, manufacture, and/or assembly were present from the design state and were known, or reasonably should have been known, to Defendant Midwest Hose prior to the date of the manufacture of the subject hose, and it was placed in the stream of commerce for sale to the public.

10. Defendant Midwest Hose, as a legal entity, can only act through its officers, directors, employees, and agents.  As the employer of those who set policy and engage in either an active or passive role in the hiring, training, and supervision of the employees, Defendant Midwest Hose is responsible for its acts and/or omissions which were the direct and proximate cause of the injuries to Plaintiff and resulting damages.

11. Upon information and belief, at some time prior to June 7, 2018, Defendant Midwest Hose negligently planned, designed, and manufactured the subject hose.

12. Upon information and belief, at some time prior to June 7, 2018, Defendant Midwest Hose negligently sold and/or distributed the subject hose to Plaintiff Kegan Dragoman's employer, Crown Well Services, LLC.

13. On June 7, 2018, Plaintiff was employed by Crown Well Services, and was performing a bleed-down procedure involving the subject hose.

14. Mr. Dragoman was an active participant in the safety checks and made sure the bleed-down of the nitrogen was accomplished in a slow, methodical fashion to prevent shocking the equipment with the nitrogen pressure in the well.

15. The subject hose separated, experiencing equipment failure, and ruptured.

16. The explosion caused equipment to impact Mr. Dragoman, throwing him and shattering bone in his leg, and damaging other portions of his body.

17. Failure of the hose was not caused by the crew's inattention to procedures, lack of knowledge, or lack of adequate supervision.

18. The subject hose failed under normal operating conditions.

19. The subject cost failed under normal operating conditions, at a pressure below its rated working pressure of 5000 PSI.

20. Upon information and belief, the subject hose was unreasonably defective and dangerous.

21. Upon information and belief, Defendant Midwest Hose unreasonably failed to plan, design, guard, and warn of known dangers, including the danger that the hose would rupture when being used as it was on June 7, at a pressure of under 5000 PSI.

22. Upon information and belief, Defendant Midwest Hose was negligent in the distribution of the subject hose and unreasonably failed to guard, warn, and instruct Crown Well Services and its employees of the dangers known to them about the design, capabilities, and operation of the subject hose.

23. As a result of Defendant's negligent acts and omissions, Plaintiff Kegan Dragoman suffered life altering injuries.

## **FIRST CAUSE OF ACTION**

### **(Strict Liability)**

24. Plaintiff incorporates and adopts be reference all the facts and allegations above as though fully set forth herein.

25. Defendant Midwest Hose is strictly liable for designing, testing, manufacturing, assembling, installing, selling and/or placing its defective and unreasonably dangerous product into the stream of commerce.

26. At all times relevant herein, the subject hose described herein was defective and unreasonably dangerous as to design, manufacture, and warnings, causing the hose to be in a defective condition that made it unreasonably dangerous for its intended use.

27. Defendant Midwest Hose is strictly liable for the design, testing, manufacture, promotion, market, warrant, supply, sale, and distribution of the subject hose in a form which was defective and unreasonably dangerous in that it:

    a. Failed to reasonably design the hose to protect users from rupture at pressures of up to 5000 PSI.

    b. Failed to reasonably design, test, manufacture, assemble, and crimp the subject hose.

    c. Failed to reasonably design, test, manufacture, and distribute a hose that would comply with the standards set forth in applicable state and federal regulations.

    d. Failed to reasonably recall the defective hose and notify distributors, purchasers and users of the recall and danger of the defective condition.

e.  Otherwise failed to meet the standard of design, testing, manufacture, assembly, installation and distribution requisite in the industry to reasonably protect consumers, users and specifically, Plaintiff.

28. The subject hose was used in an intended and/or foreseeable manner when the incident described herein occurred.

29. The subject hose was defectively designed and manufactured, in that it did not possess adequate and proper safety features including structural integrity to withstand 5000 PSI and/or warnings to not use the host at 5000 PSI.

30. At all times herein. Defendant Midwest Hose had a duty to ensure that the subject hose was free from defects in its design and manufacture so as to ensure that the hose contained adequate and proper safety features including structural integrity, and adequate instructions and warnings.

31. At all times herein, Defendant Midwest Hose had the technology and knowledge to produce a safer hose, on terms that would have been economic and profitable to produce on a mass scale, and would have protected Plaintiff from the harm and injury that he suffered.

32. Defendant Midwest Hose failed to design, test, manufacture, assemble, fit, inspect, and/or sell a product that was safe for its intended use.

33. Defendant Midwest Hose failed to warn of the inherent and latent defects resulting from the lack of safety features and structural integrity that made the subject hose dangerous and unsafe for its intended use.

34. Defendant Midwest Hose designed, manufactured, assembled, and sold the subject hose without proper and necessary warnings and guards.

35. The defect existed at the time that Defendant Midwest Hose designed, manufactured, assembled, and sold the subject hose.

36. At all times herein, Defendant Midwest Hose breached its duty to ensure that the subject hose was safe and distributed the subject hose in a defective condition.

37. As a result of Defendant Midwest Hose's designing, testing, manufacturing, assembling, selling and/or placing its defective and unreasonably dangerous product into the stream of commerce, Plaintiff was injured and damaged.

## SECOND CAUSE OF ACTION

### (Negligence)

38. Plaintiff incorporates and adopts be reference all the facts and allegations above as though fully set forth herein.

39. This action is brought against Defendant Midwest Hose in its capacity as designer, manufacturer, assembler, tester, and distributor of the subject hose.  Defendant Midwest Hose had a duty to design, manufacture, assemble, test, and distribute a Rotary/Kelly hose free from defects.

40. Defendant Midwest Hose is responsible for the acts and omissions of their employees. Defendant Midwest Hose had a duty to design, manufacture, assemble and distribute a Kelly hose that was not defective, unreasonably dangerous, and which contained adequate and proper safety features.

41. Defendant Midwest Hose had a duty to disclose the presence of product defects or warn of limitations in the safety of the weld positioner ultimately sold to Plaintiff's employer.  In addition, Defendant Midwest Hose had a duty to warn Plaintiff or any other prospective

consumer user that the subject hose had a high likelihood of failing, rupturing, and/or exploding without warning.

42. Midwest Hose's negligence rendered the subject hose unreasonably dangerous and was a breach of the duties as described above.

43. Defendant Midwest Hose negligently failed to disclose the presence of product defects or warn of limitations in the safety of the subject hose sold to Plaintiff's employer.  In addition, Defendant Midwest Hose failed to wan Plaintiff or any prospective consumer/user of the subject hose that the hose was unsafe.

44. As a direct and proximate cause and result of the negligent acts and omissions of Defendant Midwest hose, Plaintiff suffered debilitating injuries.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty)

45. Plaintiff incorporates and adopts be reference all the facts and allegations above as though fully set forth herein.

46. Defendant Midwest Hose impliedly warranted that the products it designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce would be safe and fit for the ordinary purposes for which they were intended.

47. Defendant Midwest Hose breached the implied warranty described above because Defendant did not disclose that the subject hose, as designed, manufactured, assembled, sold and/or placed into the stream of commerce as described above, was defective.  As a result, the subject hose was not safe and fit for the ordinary purpose for which it was intended.

48. As a direct and proximate cause and result of the breach of implied warranty, Plaintiff was injured.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

49. Plaintiff incorporates and adopts be reference all the facts and allegations above as though fully set forth herein.

50. Defendant Midwest Hose expressly warranted that the subject hose it designed, manufactured, assembled, sold and/or placed into the stream of commerce was free from defects, reasonably fit for general use by the public, safe for general use by the public, safe for its intended purpose, and merchantable.

51. Defendant Midwest Hose breached these express warranties, in that the subject hose was neither merchantable, safely designed, safely manufactured nor fit for its intended uses.

52. Defendant Midwest Hose further breached its warranty to Plaintiff and others in that its product was inherently defective, unreasonably dangerous, and ultra-hazardous.

53. The injuries and damages sustained by Plaintiff were caused by misrepresentations of material facts concerning the quality and/or character of the products designed, manufactured, assembled, sold and/or placed in to the stream of commerce by Defendant, for which Defendant is liable to Plaintiff.

54. Plaintiff and/or his employer relied upon certain misrepresentations of material fact concerning the quality and/or character of the subject hose that was designed, manufactured, assembled, sold and/or placed into the stream of commerce by Defendant, for which Defendant is liable to Plaintiff.

55. In designing, manufacturing, assembling, selling, and/or placing into the stream of commerce the subject hose described above, Defendant Midwest Hose expressly warranted that its product complied with and/or exceeded pertinent standards.

56. In designing, manufacturing, assembling, selling, and/or placing into the stream of commerce the subject hose described above, Defendant Midwest Hose expressly warranted that its product was rated to safely withstand 5000 PSI without risk of rupture, serious injury, or death.

57. Defendant Midwest Hose breached these express warranties in that the product was defective.

58. As a direct and proximate result of the breach of express warranty, Plaintiff was injured.

WHEREFORE, for the reasons set forth herein, Plaintiff requests that this Court enter judgment against Defendant for compensatory damages, interests and costs associated with bringing this action.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED this _____ day of _____, 2019.

Respectfully submitted,

_/s/_ _____

Grant H. Lawson # 6-4260
Michael W. Chaloupka, Esq. #39842
**METIER LAW FIRM, LLC**
4828 S. College Avenue

Fort Collins, CO 80525
(970) 377-3800
(970) 225-1476 (fax)
mike@metierlaw.com
grant@metoierlaw.com
galen@metierlaw.com